## McDowell et Ux. *v.* Potter.

The statute of limitations begins to run against a claim on an attorney or his administrator for money collected for a client, from the time the client has notice or means of knowing of the receipt of the funds: and the *onus* is on the attorney to prove such notice or means of knowledge.

The husband suing in right of his wife, cannot take advantage of the exception in the statute of limitations in favour of femes covert.

IN error from the Common Pleas of Centre county.

This was an action of assumpsit by McDowell and wife, to recover from the defendant's intestate a sum of money collected by him as attorney for plaintiffs.

Plea: the statute of limitations.

It appeared that a legacy had been collected by defendant's intestate, who died more than six years before this suit was brought. The legacy had been bequeathed to plaintiff's wife; and they offered to prove that McDowell, the husband, had declared his intention not to take the legacy for his own use; and they also offered some evidence tending to show ignorance on the part of plaintiffs, of the receipt of the legacy by defendant's intestate; which the court overruled.

*Miles*, for plaintiff in error.—1 Miles, 204; 2 Wh. 154; 2 Barr, 72; 6 W. & S. 290; 5 Barr, 157; 5 Whart. 142; 7 S. & R. 235.

*Burnside* and *Hale*, contrà.—The statute is a bar, and the evidence does not suspend it: 11 S. & R. 140; 2 W. & S. 122, 438; 1 Wh. 66; 10 W. 172; 6 W. & S. 213. The relation of attorney and client was dissolved by death; and from that time the statute commenced running: 15 Wend. 302; 4 Barr, 56; 4 Whart. 455; 1 W. & S. 112; 1 W. 275; 9 Pick. 212; 5 W. 87; 1 Ib. 389.

*June* 5. ROGERS, J.—If the case depended on lapse of time merely, the action, which is assumpsit, would be barred by the act

of limitations; for the money was received by the defendants' intestate in the years 1835 and 1836, and suit was not brought until the April Term of 1846, a period of about ten years. To the plea of the statute, the plaintiffs rejoin that the defendant was a practising attorney, and as such collected the money in suit for their use, that he neglected to advise them that he had so received it, and altogether concealed the same from their knowledge. The defendant denies this allegation of neglect and concealment, and moreover contends, that if ignorant of the state of the transaction, they had the means of knowledge in their power. This is the substance of the pleadings, on which the parties went to trial.

The point on which the case turns is, when did the statute begin to run; that is to say, did it commence from the time the money was received, or from the time the plaintiffs had notice of it? That the statute did not begin to run until the defendants were informed of its collection, is the necessary result of several cases which have been ruled by this court. It must be recollected, that this is a contest between attorney and client. In Bredin v. Kingland, 4 W. 423, it is said to be the duty of an attorney, in a reasonable time, to inform his client of the receipt of money, and either transmit it to him, or hold it subject to his order. To the same purpose is Stafford v. Richardson, 15 Wend. 305. The court say, speaking in reference to any attorney having received the plaintiff's money, he should either remit it to him, or give him notice that he has received it, that the plaintiff may call for it, or order it to be remitted. In Riddle v. Murphy, 7 S. & R. 235, it is ruled, that the act of limitations only commences to run from the time fraud, if there be any, is discovered or becomes known to the party in interest. So in the case of the Harrisburg Bank v. Forster, 8 W. 16, it is decided that the cashier of a bank cannot avail himself of the statute of limitations to defeat an action on his own note: unless he can show clearly a performance of all his duties in relation to it, by exhibiting the note as due and unpaid to the board of directors.

The authorities cited show that it is incumbent on the defendant to prove notice of the receipt of the money, and without such proof he cannot claim the protection of the statute. The principles ruled in the case of the Harrisburg Bank v. Forster apply here. As in that case, an attorney stands in a fiduciary character, and before he can be permitted to avail himself of the defence, he must prove that he has performed his duty. His omission to do so amounts to such concealment of the state of the business as in contemplation

of law is such a fraud as deprives him of the protection of the statute, and makes it necessary to prove payment of the debt due, as in other cases. Although as a general rule the attorney is required to furnish proof of notice to his client, yet I agree he may shield himself against a demand of long standing by satisfactory evidence that with ordinary care and diligence the client might have known that the money had been collected, and was in the hands of the attorney.

There are questions of fact of which the jury must judge, depending on a variety of circumstances which it is impossible to enumerate. The onus, be it observed, is thrown upon the defendant. It is said it may be difficult for an attorney to be prepared with the requisite evidence. In some cases it may be, yet the cases in which an attorney of ordinary care will be exposed to any risk on that account, will be rare; and, at any rate, it is as easy to furnish affirmative proof, and as reasonable to require it, as to hold that the plaintiff shall be compelled to prove negatively that he was altogether uninformed of the receipt of the money. Here the court ruled the plaintiff out of court without any evidence whatever bearing on the preliminary point that the plaintiff was ever apprised of the collection of the legacy. In this, we think the court was in error. The proof, so far as it was given, tended to show, and as such was competent evidence, that the plaintiffs were unaware that the money was in the hands of the attorney, and that they at least had never received it. The burden of proof then, I repeat, is on the defendants. They are bound to show affirmatively either that the plaintiff knew of the collection of the money, or that, with ordinary care and diligence, they might have known it.

It is next contended that Mrs. McDowell, being a feme covert, is within the proviso of the act of limitations, and, consequently, the statute is no bar to her. It is decided that an action on the case is within the saving clause of the act of 1813, relating to limitations of actions : 2 Whart. 154. Although not within the letter it is within the spirit of 'the act, as has been ruled in England and this country. At the time the legacy was given, Mrs. McDowell was a feme sole ; but when suit was brought and the money received, a feme covert ; but, notwithstanding, we cannot agree that this, the commencement and prosecution of either suit, was a reduction of the legacy into the possession of the husband ; particularly connecting it with the parol proof that it was not his intention to convert the money to his own use. Thus it is ruled that even when the share of the wife is reduced to actual possession, yet if it appear

that he did not intend to convert it to his own use, it is in law the property of the wife : Hind's Estate, 5 Whart. 138.   In Timbers *v.* Katz, 6 W. & S. 290, it is said that the undoubted rule is, that reduction into possession by the husband, of his wife's choses in action, is in all cases *primâ facie* evidence of conversion to his own use, but the presumption of intent may be repelled by disproof of the fact in the particular instance.

The rule is, that the law will not cast the ownership on the husband without his consent.   If this be so, where the choses of the wife have been reduced to actual possession, much more will the principle apply where they are still in action, and in a course of recovery.   Indeed, without the aid derived from the parol proof, I cannot agree that the husband, in suing for its recovery in the original suit in their joint names, and the receipt of the money by the counsel, was a reduction into possession of the husband, which would destroy the right of survivorship in the wife.   Then the question arises, whether the defendants are permitted to take advantage of the proviso in a suit by husband and wife, to recover the wife's choses in action, or is the wife to be postponed to the time she becomes discovert.   Although the letter of the act doubtless is so, yet is this construction within its spirit ?   The proviso in the act runs thus :  " if any person or persons, who is or shall be entitled to any action of trespass, detinue, trover, replevin, actions of account, debt, actions of trespass for assault and battery, wounding, or imprisonment, action on the case for words, be at the time, &c., within the age of twenty-one years, feme covert, *non compos mentis*, imprisoned, or beyond the seas, that then such person or persons shall be at liberty to bring the same actions within such time as are before limited, after their coming to or being of full age, discoverture, of sound memory, at large, or returning into the province, as other persons."

Now, although the point has not been determined as to feme coverts, that I am aware of, yet it has been in the case of infants and persons beyond seas.   Thus, although an infant is excepted in the statute, yet if an infant, by his guardian during his infancy, brings an action, the defendant cannot plead the statute of limitations : Chandler *v.* Villett, 2 Saund. 121.   The reason given is, that the infant is not bound to wait until he comes of age.   A similar point was determined on the statute of fines : 4 Henry 7, ch. 24.   The words of the statute are, " that infants and their heirs shall take their action on entry within five years next after they are of full age of twenty-one years."   On these words it was

resolved that an infant may, if he pleases, enter and have his action before he is of full age, and avoid the fine : Plowd. 366 ; 2 Inst. 519 ; 1 Leonard, 215.

The same principle is also ruled as to persons beyond seas. In Wilkinson on the Statute of Limitations, pages 21, 29, it is said, although persons *beyond the seas* are privileged by the proviso in the statute, which preserves the demand, it cannot be objected that the plaintiff should have returned to England before he had commenced proceeding. The act of Parliament was intended to allow privileges, and not to abridge any right which the persons mentioned in the proviso had; for if they were obliged to return from beyond seas into England, before they can maintain an action here, the statute would not be of any benefit to them, and might in many cases virtually extinguish the demand; as if a person constantly resident in the East or West Indies were to sell goods in England, it might not be worth while for him to proceed to England to bring an action.

In a case in chancery, where it was objected that a person beyond seas ought to return to enable him to commence an action, Lord Hardwick held that the case was not to be distinguished from the case of the infant in 2 Saund. 120, Chandler *v.* Villett, and therefore he overruled the plea: Ridgway's Reports, *tempus* Hardwick, 284. The same principles apply to persons *non compos*, and persons imprisoned, and in all the cases enumerated the defendant cannot plead the act of limitations. But is the law the same as to femes covert ? Can the defendants avail themselves of the act of limitations where suit may be brought by the husband in the name of the husband and wife ? That such suit may be brought during coverture, at the pleasure of the husband, we cannot doubt, but may he delay the suit to any indefinite period during coverture without exposing himself to the plea of the statute ? We think not; because the delay is his fault, which ought not to prejudice the defendant, and the money when recovered belongs to him. It is true that in this case, if the testimony is believed, he has treated the legacy in suit as the property of the wife, but he may change his views in that respect at any time before and after judgment. It is substantially his suit, and while his name remains on the record the defendant is at liberty to plead the act. If he should die and the action survive to the wife, a different question would be presented; but if she should die, there could be no question about it. After his death the wife may within six years thereafter maintain the suit, according to the letter of the act; but under the

circumstances as they they now exist on the record, the statute of limitations is a bar to the action. It may be said if she may bring suit after his death, why not allow her to avow the act before, when she is a party. Simply because in contemplation of law it is not her action, but the action of the husband. It is a privilege personal to himself, and cannot be made to enure to his benefit. Besides, the defendant is entitled to the chance that his interest may never accrue, as she may die before her husband, in which case the chose would be the property of the husband.

Judgment reversed, and a *venire de novo* awarded.